```
USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 4/16/19
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

EMIL KOLEV,

                     Petitioner,

            v.

JEFFERSON SESSIONS, et al.,

                     Respondent.

No. 17-CV-9477 (RA)

ORDER

RONNIE ABRAMS, United States District Judge:

On January 28, 2019, the Court ordered Petitioner to show cause why this case should not be transferred to the District of New Jersey in light of the Court's Memorandum Opinion and Order in *Salcedo v. Decker*, No. 18-CV-8801, 2019 WL 339642 (S.D.N.Y. Jan. 28, 2019). In *Salcedo*, the Court held that under the immediate custodian rule, the petitioner's proper custodian was the warden of the New Jersey facility where she was detained—the same one where Kolev was held—rather than the New York field office director who exercised certain legal authority over her immigration case. *Id.* at *2. Having reviewed Petitioner's response and Respondent's reply, the Court finds this case indistinguishable from *Salcedo*. The Court therefore vacates its September 17, 2018 Memorandum Opinion and Order (ECF No. 31) and transfers this case to the District of New Jersey.

## DISCUSSION

In his response, Petitioner makes no attempt to distinguish this case from *Salcedo*. Rather, he sets forth four arguments in support of the view that ICE's New York Field Office Director is the "warden" of the Hudson County Correctional Facility (HCCF). These arguments are unavailing. The first argument—that the proper custodian is the individual with the "power and authority" to produce and liberate the detainee if a writ is issued—ignores the Court's holding in

*Salcedo*, following the clear majority of courts in this circuit, that only the immediate custodian may be named as a respondent in a core alien habeas challenge. *See Salcedo*, 2019 WL 339642 at *2. Second, Petitioner argues that the ICE website lists the New York Field Office Director, and not the HCCF Director, as having "authority over the facility and detainees," Response at 4, and that therefore only the former is the warden of the facility where Petitioner was detained. As Respondent points out, however, the website does not suggest that any ICE officials serve as warden or operate day-to-day control over the physical custody of detainees. Third, Petitioner cites a letter by the HCCF Director in which he references his managerial responsibilities, inferring from this statement that the Director is a "remote supervisory official" who cannot be the immediate custodian per *Padilla*. But *Padilla* does not suggest that an immediate custodian cannot also exercise managerial capacities, and Petitioner does not explain how ICE's New York Field Director—who has no immediate, physical responsibility for detainees at HCCF—is less a "remote supervisory official" than the actual director of this facility. Fourth, Petitioner cites Section 1357(g)(1) of the Immigration and Nationality Act, which provides that under any 8 C.F.R. § 287(g) agreement, such as the one between Hudson County, New Jersey and ICE, covered state officers "shall be considered to be acting under color of Federal authority for purposes of determining the liability, and immunity from suit, of the officer or employee in a civil action brought under Federal or State law." 8 U.S.C. § 1357(g)(8). From this and other text in § 1357(g), Petitioner concludes that the HCCF Director "has no authority or immediate control of immigration detainees." Response at 6. The selected statutory language, however, deals with legal authority, not immediate control, and Petitioner's attempt to collapse the two is unconvincing.[1]

---

[1] Petitioner points to a Memorandum of Understanding between ICE and the Hudson County Department of Corrections, which he says shows that all services provided to immigration detainees "are provided at the direction and under the direct supervision of the local ERO field directors." Reply at 4. The enclosed MOU, however, reinforces the conclusion that the field office director retains legal or supervisory, but not immediate, control of these detainees. *See* Ex. 1 at 6–7 ("ICE SUPERVISION").

2

Thus, none of Petitioner's arguments persuade the Court to revise its recent analysis of this precise issue in *Salcedo*.

Petitioner also represents that he is unable to respond adequately to the Court's Order to Show Cause, which referenced the Intergovernmental Service Agreement between ICE and HCCF, because "Mr. Kolev and his Counsel are not privy" to this document and "in light of [the] PACER rule restricting remote access to immigration related cases, cannot purchase or access any filing in [*Salcedo*]." *Id.* at 2–3. But Respondent notes that the same copy of the agreement this Court received in *Salcedo* is publicly available on ICE's website. Moreover, Respondent has since provided a copy of the agreement to Petitioner's Counsel, who has made no further application to the Court to provide briefing on this issue.

## CONCLUSION

For the foregoing reasons, Petitioner has failed to demonstrate why this case is distinguishable from *Salcedo*. The Intergovernmental Service Agreement between U.S. Immigration and Customs Enforcement and the Hudson County Correctional Facility therefore dictates the proper venue in this case in the same manner as it did there.

The Clerk of Court is respectfully directed to terminate all open motions and transfer this case to the United States District Court for the District of New Jersey. The Clerk of Court is further directed to vacate the prior decision of this Court in *Kolev v. Sessions*, No. 17-CV-9477 (S.D.N.Y. Sept. 17, 2018) (ECF No. 31).

SO ORDERED.

Dated:   April 16, 2019
         New York, New York

Ronnie Abrams
United States District Judge

3